TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00074-CR







Scott MacKenzie, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT


NO. 3041974, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Scott MacKenzie guilty of burglary of a habitation with
intent to commit sexual assault and assessed punishment at sixteen years' imprisonment. See
Tex. Penal Code Ann. § 30.02 (West 2003). In a single point of error, appellant contends the trial
court erred by permitting the State to introduce evidence of an extraneous offense. We overrule this
contention and affirm the judgment of conviction.

The basic facts are undisputed. On September 5, 2004, the complaining witness,
K.B., fell asleep on the couch in her apartment living room while watching television with her
roommate and a friend. After K.B. fell asleep, the roommate, L.M., went to her bedroom. Their
friend, B.K., called a cab and went home, leaving the front door of the apartment unlocked. At about
3:30 a.m., K.B. awoke to find appellant standing in her living room with his pants down,
masturbating. K.B. shouted at appellant to leave her apartment, then she ran to L.M.'s bedroom and
awakened her. The two women heard appellant in the living room saying, "I'm sorry, I'm sorry." 
They called out for him to leave and he did.

The two women called B.K. and told her what had happened. They also called the
police. B.K. returned to the apartment before the police arrived. When she answered a knock on
the door, it was appellant. He was "apologizing profusely." B.K. told appellant to leave and that
the police had been called. Appellant left but soon returned, saying he wanted to apologize to K.B. 
B.K. told appellant that K.B. would not talk to him.

Appellant wrote two letters to K.B., both dated two days after the incident and hand-delivered to her apartment. In both letters, he apologized for his conduct and promised that it would
not happen again. In the second letter, appellant wrote, "I would never have entered your house if
I hadn't thought that it was cool. I had talked to you through the window, and by your body
movements thought that you were cognizant. It was only after I came in that I realized that you had
in fact been asleep."

Appellant lived in the same apartment complex as K.B. and L.M., but in a different
building. Both women were acquainted with him, having talked to him around the pool and at a
nearby bar. K.B. testified that she and two friends had once accepted appellant's invitation to go to
his apartment for drinks, but she had never invited appellant to her own apartment. L.M. testified
that she arrived home one night a few months before the incident in question to find appellant
standing in the dark outside the apartment. When she asked appellant what he was doing, he said
he was looking for K.B.

Appellant's conduct on the night of September 5, 2004, had been introduced as
an extraneous offense at appellant's 2005 trial for a sexual assault that occurred in July 2002. 
See MacKenzie v. State, No. 03-05-00731-CR, 2007 Tex. App. LEXIS 358 (Tex. App.--Austin
Jan. 22, 2007, no pet. h.) (affirming conviction). Appellant testified at that earlier trial, and a portion
of that testimony was introduced without objection at the instant trial in 2006. In his testimony,
appellant said that he was walking past K.B.'s apartment on September 5 when he saw her through
the window. He became sexually aroused and opened his pants. Not realizing that K.B. was asleep,
appellant spoke to her. She "fidgeted," which appellant took to mean consent for him to enter her
apartment. Appellant said that after he entered the apartment and K.B. awoke, he realized that he
had made "a horrible mistake."

Over appellant's objection, the trial court also permitted the State to offer evidence
of the July 2002 sexual assault. (1) H.M., the complainant in that case, testified that she was visiting
Austin and staying with a friend, A.W. H.M. was acquainted with appellant, who was then dating
A.W. On the night in question, H.M. went to bed in A.W.'s bedroom while appellant and A.W. slept
elsewhere in the apartment. During the night, H.M. awoke to find appellant in her bed and having
sexual intercourse with her.

Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's bad
character in order to show action in conformity to that character. Tex. R. Evid. 404(b). Extrinsic
misconduct evidence may be admissible for other purposes, however, such as to prove intent, motive,
or absence of mistake. Id. For example, in the opinion affirming appellant's conviction for the
2002 sexual assault, this Court held that the testimony regarding the facts of the instant offense
was properly admitted to prove the complainant's lack of consent. See MacKenzie, 2007
Tex. App. LEXIS 358, at *8. We noted that in his testimony, appellant had asserted that he thought
the sleeping H.M. had consented to his conduct through her body language. Id. Evidence that in
2004, appellant had similarly interpreted the sleeping K.B.'s movements as consent to sexual activity
invoked the "doctrine of chances" to show that appellant intended to have sexual intercourse without
H.M.'s consent. Id.; see Brown v. State, 96 S.W.3d 508, 512 (Tex. App.--Austin 2002, no pet.)
(discussing use of extraneous offense evidence to prove intent and doctrine of chances).

Just as the testimony regarding the instant offense had been introduced at appellant's
trial for the 2002 sexual assault to prove intent and lack of consent in that case, the State offered
H.M.'s testimony regarding the 2002 assault at the instant trial to prove K.B.'s lack of consent and
appellant's intent to commit sexual assault. (2) Appellant contends that this was error because the
evidence at this trial did not establish that the charged offense and the 2002 extraneous offense
possessed sufficient similarities for the doctrine of chances to apply. Appellant also urges that any
probative value the extraneous offense might have had was outweighed by the danger of unfair
prejudice to the defense. Tex. R. Evid. 403.

Under the doctrine of chances, there must be a similarity between the charged and
extraneous offenses, since it is the improbability of a like result being repeated by mere chance that
gives the extraneous offense probative weight. Brown, 96 S.W.3d at 512. The degree of similarity
required, however, is not as great when intent is the material issue as when identity is the material
issue and the extraneous offense is offered to prove modus operandi. Id. at 512-13.

The admissibility of the July 2002 sexual assault was argued outside the jury's
presence. Asked by the court to describe the similarities between the charged offense and the
extraneous offense, the prosecutor cited:


 [T]he fact that she moved, that was his version of what it takes for a woman to
consent, for him to approach her, is exactly the same type of evidence that was
elicited at the last trial where the movement of the body by [H.M.] was consent for
him to have sex, because she never verbally consented.


 In the [H.M.] case it is very similar, in that she is asleep when he decides to have
sex with her. He approaches her while she is asleep. She never agreed to have sex. 
She never had a relationship with him. He crawls into bed with her, and this man is
having sex with her while she is asleep.


 When she awoke, he left. Just like in this one, when [K.B.] awoke, that is when he
stopped his advances.



The court found that the two offenses were "significantly similar in nature, and enough to be
admissible for the purposes of showing intent in this instance."

Appellant points out that the jury did not hear evidence of all the similarities between
the two offenses cited by the prosecutor and relied on by the court in its ruling. As previously noted,
H.M. testified that appellant had sexual intercourse with her while she was asleep. But the jury did
not hear evidence that appellant said that he interpreted H.M.'s body movements as signifying her
consent to the sexual intercourse. The jury also did not hear evidence that appellant stopped his
assaultive behavior when H.M. awoke. Of the similarities mentioned by the State outside the jury's
presence to justify the admission of the extraneous offense, the jury heard only that in 2002,
appellant approached a sleeping woman and engaged in sexual activity, albeit of a kind different
from that alleged in this case.

The situation before us is analogous to the one presented in Fuller v. State, 829
S.W.2d 191, 196-99 (Tex. Crim. App. 1992). In Fuller, a capital murder case, the defendant
objected to the introduction at the punishment phase of testimony describing the beliefs and activities
of the Aryan Brotherhood, a prison gang. Id. at 196. The defendant urged that the evidence was
irrelevant because the State had not shown that he was a member of the gang or subscribed to any
of its beliefs. Id. The trial court overruled the objection and admitted the testimony, subject to the
State later proving appellant's connection to the gang. Id. at 197; see Tex. R. Evid. 104(b). No such
connection was made. Fuller, 829 S.W.2d at 197-98. The court of criminal appeals held that
without probative evidence that the defendant was a member of the Aryan Brotherhood or subscribed
to its beliefs, the previously admitted testimony concerning the gang's beliefs and activities in the
abstract "was vulnerable to a motion to strike at the conclusion of the State's case, even if it was not
objectionable on relevancy grounds when offered." Id. at 198. The court went on to hold that it is
not the trial court's duty to notice whether conditionally admitted evidence is eventually "connected
up"; rather, the objecting party must reurge his objection after all the proof is in, ask that the
offending evidence be stricken, and request that the jury be instructed to disregard it. Id. at 198-99. 
Because the defendant did not do this, the error was not preserved for appeal. Id.

In the cause before us, evidence regarding appellant's 2002 sexual assault of H.M.
was relevant to prove K.B.'s lack of consent and appellant's intent to commit sexual assault only to
the extent that the extraneous offense and the charged offense were shown to be sufficiently similar
to invoke the doctrine of chances. Based on the State's proffer, the trial court did not abuse its
discretion by ruling that the similarities between the 2002 incident and the 2004 incident warranted
admission of the extraneous offense pursuant to rule 404(b) and that the probative value of the
evidence outweighed the danger of unfair prejudice. However, the State failed to introduce before
the jury all the proffered evidence regarding the similarities between the charged and extraneous
offenses on which the relevance of the extraneous offense depended. Had appellant moved to strike
H.M.'s extraneous offense testimony at the close of the State's case and had the trial court overruled
the motion, it is possible that reversible error would be presented. But appellant did not renew his
objection and did not move to strike H.M.'s testimony. We must conclude that any error in the
admission of H.M.'s testimony was not preserved for review.

The point of error is overruled and the judgment of conviction is affirmed.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: March 7, 2007

Do Not Publish
1. In other words, the September 2004 incident was introduced as an extraneous offense at
appellant's trial for the July 2002 sexual assault, and the July 2002 assault was introduced as an
extraneous offense at this trial for the September 2004 incident.
2. It is not clear whether the State was seeking to prove K.B.'s lack of consent to appellant's entry
into her apartment, her lack of consent to his sexual activity, or both.